UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY ROGERS,

                Petitioner,                  Case Number: 2:07-CV-11589

v.                                            HON. VICTORIA A. ROBERTS

RAYMOND BOOKER,

                Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY

Petitioner Randy Rogers has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. He challenges his convictions for three counts of assault with intent to rob while armed, felon in possession of a firearm, and felony firearm. Respondent has filed an answer in opposition arguing that his claims are meritless and procedurally defaulted. For the reasons set forth below, the Court denies the petition.

### I. Facts

The Michigan Court of Appeals summarized the facts leading to Petitioner's conviction as follows:

> On December 24, 2000, Derek Leonard, Darnisha Brown, Lakecia Jones, John Wilderson, and LaToya Reeves, worked the closing shift at the McNichols Road Church's Chicken restaurant. After cleaning up and closing down the restaurant for the night, all five employees left the restaurant together around 12:15 a.m. As they left the restaurant, Leonard, the store manager, began to lock the door to the restaurant as the other employees approached Jones' car, which was parked close to the restaurant. While Leonard was locking the door, defendant ran toward him brandishing a gun and wearing a ski mask. Using the gun to threaten the

employees, defendant ordered all of the employees over to the restaurant door and forced Leonard to unlock it. After the door was unlocked, the gunman herded the employees into the restaurant's office. Defendant ordered Leonard to open the safes, threatening to kill him if he did not get the safes open fast. Defendant ordered the other four employees to remain at the back of the office. When Brown, Jones, Wilderson and Reeves heard the man threatening Leonard, they pulled what money they had out of their pockets and placed it on the counter. Defendant, however, refused their money. Eventually, Leonard succeeded in getting one of the safes open, but defendant fled through the back door as the restaurant's alarm sounded. Defendant was apprehended shortly after exiting the store.[2]

_____

[2] Brandon Hunt, a Detroit Police officer, was off-duty at 12:15 a.m. on December 25, 2000, and just happened to be driving by the Church's restaurant on McNichols on his way home when he observed defendant force the employees back inside the restaurant at gunpoint. Hunt got out of his car and approached the window, where he watched through the window as the gunman robbed the restaurant. Hunt saw a marked scout car approaching the area and flagged it down using a flashlight. While the uniformed officers called for backup, Hunt continued to watch events through the window, until he saw and heard the perpetrator leave the building through the back door. Hunt then gave chase, following the barking of dogs in the area, and eventually located defendant lying under a parked car in a driveway a few blocks from the restaurant. Defendant then began running again, and Hunt again gave chase, and subsequently caught and subdued defendant a few minutes later, then sat on defendant's back on the ground until backup could arrive to take defendant into custody.

*People v. Rogers*, No. 240838, slip op. at 3-4 (Mich. Ct. App. Oct. 14, 2003).

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of three counts of assault with intent to rob while armed, felony firearm, and felon in possession of a firearm. On January 28, 2002, he was sentenced to 225 months to 60 years' imprisonment for each of the assault convictions, 3 to 7-1/2 years' imprisonment for the felon in possession conviction, all to be served concurrently with one another and consecutively to two years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following

claims through counsel and in a *pro per* supplemental brief:

1.  The trial court committed reversible error by mis-instructing the jury with the "specified felony" requirements of M.C.L. 750.224f(2) for this non-specified prior felony (receiving and concealing stolen property), pursuant to M.C.L. 750.224f(1).

2.  The prosecution presented insufficient evidence to prove beyond a reasonable doubt the assault with intent to rob while armed charges as to Ms. Brown, Ms. Jones, and Mr. Wilkerson, where the unrefuted evidence shows the perpetrator's attention was directed to Mr. Leonard and to the safe, and the perpetrator expressly refused personal money of the three employees.

3.  The lower court abused its discretion by failing to instruct the jury *sua sponte* on attempted armed robbery as a lesser offense of assault with intent to rob.

4.  Defendant's state and federal 5th and 14th Amendment due process of law and right to a fair trial was violated when the prosecutor misrepresented key evidence to sustain a conviction.

5.  Defendant's state and federal 6th and 14th Amendment effective assistance of trial counsel and right to a fair trial was violated when trial counsel's failure to object to the prosecutor's admission and misrepresentation of false/tainted key evidence.

6.  Defendant was deprived of his state and federal 6th and 14th Amendment effective assistance of trial counsel and right to a fair trial when counsel failed to obtain the police radio run tape from the prosecutor after the trial court granted counsel's motions to preserve the tape.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Rogers,* No. 240838 (Mich. Ct. App. Oct. 14, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising

the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied

leave to appeal. *People v. Rogers*, No. 125176 (Mich. Apr. 30, 2004).

Petitioner filed a motion for relief from judgment in the trial court, raising the following

3

claims: (i) ineffective assistance of counsel; (ii) prosecutorial misconduct; (iii) trial court erred in failing to provide reasons on the record for denial of motion for directed verdict; (iv) trial court failed to make a finding regarding due diligence in prosecutor's failure to produce *res gestae* witnesses; (v) improper identification procedure; (vi) ineffective assistance of appellate counsel; and (vii) cumulative errors.  The trial court denied the motion.  *People v. Rogers*, No. 01-0793 (Wayne County Circuit Court Sept. 16, 2005).  Petitioner filed a motion for reconsideration and motion for resentencing.  In the motion for resentencing, he raised eleven sentencing-related claims.  The trial court denied the motion for resentencing and motion for reconsideration.

Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both appellate courts denied leave to appeal.  *People v. Rogers*, No. 270762 (Mich. Ct. App. Aug. 10, 2006); *People v. Rogers*, No. 132204 (Mich. Feb. 27, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

1.   The trial court committed reversible error by misinstructing the jury with the specified felony requirements of M.C.L. 750.224(F)(2) for this non-specific felony of receiving and concealing stolen property pursuant to M.C.L. 750.224F(1).

2.   The prosecution presented insufficient evidence to prove beyond a reasonable doubt the assault with intent to rob while armed charges as to Ms. Brown, Ms. Jones and Mr. Wilkerson, where the unrefuted evidence shows the perpetrator's attention was directed to Mr. Leonard and to the safe, and the perpetrator expressly refused personal money belonging to the three employees.

3.   The lower court abused its discretion by failing to instruct the jury *sua sponte* on attempted armed robbery as a lesser offense of assault with intent to rob while armed.

4.   Petitioner's state and federal 5th and 14th Amendment rights to due process of law and a fair trial were violated when the prosecutor misrepresented key evidence to sustain a conviction.

4

5.     Petitioner's right to the effective assistance of trial counsel was violated by counsel's failure to object to the prosecutor's admission and misrepresentation of false/tainted evidence.

6.     Petitioner was deprived of his right to the effective assistance of trial counsel and right to a fair trial when counsel failed to obtain the police radio run tape from the prosecutor after the trial court granted counsel's motion to preserve the tape.

7.     Defendant was deprived of this Sixth Amendment federal constitutional right to have the jury determine beyond a reasonable doubt all factors legally essential to his sentence contrary to M.C.L. 769.34(3)(2) and *Blakely v Washington*, 124 S. Ct. 2531 (2004).

8.     Defendant was deprived of his Sixth Amendment federal constitutional right to have the jury determine beyond a reasonable doubt all factors legally essential to his sentence.

9.     It was unconstitutional for the trial judge to enhance Mr. Rogers' criminal sentence under M.C.L. 769.34(3)(2).

10.    It was unconstitutional for the state judge to make independent judicial findings of fact under *People v Walker*, 428 Mich. 261 (using the preponderance of evidence standard).

11.    The jurisprudence in *Blakely* required the sentencing judge's factual determinations to be proven beyond a reasonable doubt.

12.    The Sixth Amendment requires a trial judge in a criminal case to adopt the common law jurisprudence in *Blakely* for sentencing hearing.

13.    It is constitutionally invalid for the state judge to utilize a sentencing procedure whereby a defendant's sentence may be increased by evidence proved only by a preponderance of the evidence.

14.    Sub-issues A through E require defendant's sentence be vacated under the Sixth Amendment and common law jurisprudence.[1]

15.    Defendant was deprived of his Sixth Amendment federal constitutional right to have all sentencing factors proven to the jury beyond a reasonable doubt.

---

[1]  Although Petitioner does not specifically identify sub-issues A through E in his petition, the Court concludes, after a careful review of the petition and supporting documents, that Petitioner is referring to his *Blakely*-based claims.

16.     The statutory language found in M.C.L. 769.34 conflicts with the Sixth Amendment right to have the jury determine all essential factors beyond a reasonable doubt, in violation of *Blakely v. Washington*.

17.     The trial court reversibly erred in scoring twenty points for prior record variable 7 where the sentencing guidelines prohibited such scoring, resulting in prejudice that caused defendant to receive a sentence five years in excess of that permitted by the properly scored sentencing guidelines.

18.     Defendant was deprived of his constitutional rights to due process of law and equal protection under U.S. Constitutional Ams. VI, XIV where he was deprived of his Sixth Amendment right to effective assistance of trial counsel, i.e., attorneys Earl S. Washington and James A. Parker.

19.     The prosecution committed misconduct by: (i) violating the discovery order and *Brady v. Maryland*, when it failed to produce the radio run tape broadcasting a description of the assailant, and (ii) failing to produce at trial two *res gestae* victim eyewitnesses where there was no showing of due diligence.

20.     Defendant was deprived of his constitutional rights to due process of law and equal protection under U.S. Constitutional Ams. VI, XIV where the trial court committed error by failing to state on the record its reasoning for denying defendant's motion for directed verdict and where the trial court failed to make a finding whether the prosecution showed due diligence in its failure to produce two *res gestea* witnesses at trial.

21.     Defendant was deprived of his constitutional rights to due process of law and equal protection under U.S. Constitutional Ams. VI and XIV where his line up was tainted by highly suggestive procedures and violated his due process rights because defendant was forced to give a voice identification without the benefit of counsel and without having been advised of his *Miranda* rights.

22.     Defendant was deprived of his constitutional rights to due process of law and equal protection under U.S. Constitutional Ams. VI and XIV where his rights at the police line up were violated because none of the other participants in the line up was similar in appearance to defendant, none spoke and police gestured to a witness to identify defendant.

23.     Defendant was deprived of the effective assistance of appellate counsel on his first appeal where counsel failed to raise ineffective assistance of trial counsel claims, failed to search out the record and raise meritorious issues, and where appellate counsel's performance prejudiced defendant's appeal.

24.     Defendant was deprived of his constitutional rights to due process of law and

equal protection under U.S. Constitutional Ams. VI and XIV where the cumulation of errors committed prior to and during his trial deprived him of a fair and impartial trial by jury.

### III.  Standard

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 410-11.

7

Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." Id. at 943. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

## IV. Discussion

### A. Jury Instructions

In his first and third claims for habeas corpus relief, Petitioner argues that the trial court improperly instructed the jury regarding the elements of felon in possession and in failing to *sua sponte* instruct the jury on the lesser offense of attempted armed robbery. Respondent argues that these claims are procedurally defaulted because counsel failed to object to the instructions at trial and the court of appeals relied on this failure in denying relief on direct review.

"[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial

8

economy are best served by addressing the merits of Petitioner's jury instruction related claims, and shall, therefore, not address the claimed procedural default.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.  Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (internal citation omitted). An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)*, (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).   In *Neder v. United States*, 527 U.S. 1, 9, (1999), the Supreme Court explained that a jury instruction "that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."

The Michigan Court of Appeals, although holding that Petitioner's claims were not preserved for appellate review, nevertheless addressed the merits of these claims.  First, the state court concluded that the felon-in-possession jury instruction did not deprive Petitioner of a fair trial.  The trial court instructed the jury that the prosecution was required to prove that less than five years had passed since all fines were paid and all imprisonment or terms of probation were

completed on the underlying felony.  In fact, the charge against Petitioner required only that less than three years have passed.  The state court held that this error did not affect Petitioner's substantial rights because defendant was convicted of the underlying felony in 1997 and sentenced to one year's probation and the charges in the pending case stemmed from incidents occurring on December 24, 2000.  With respect to Petitioner's claim that the trial court erred in failing to *sua sponte* instruct on the lesser included offense of attempted armed robbery, the state court held that, under Michigan law, the failure of a court to *sua sponte* instruct on a lesser included offense may not be grounds for reversal.  *Rogers*, slip op. at 2.

Petitioner failed to show that the trial court's reference to five rather than three years in the felon in possession instructions so infected his trial as to violate due process.  In addition, "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.2001); *see also Bagby v. Sowders*, 894 F.2d 792, 796-97 (6th Cir.1990) (en banc).  Thus, the Court finds that the jury instructions cited by Petitioner did not deprive him of a fair trial and denies habeas relief on these claims.

### B.  Sufficiency of the Evidence

In his second habeas claim, Petitioner presents a sufficiency of the evidence claim. Specifically, Petitioner argues that the state failed to present any evidence that would support a finding beyond a reasonable doubt that Petitioner intended to rob victims Brown, Jones, or Wilkerson.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

10

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at trial established guilty beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."

*Id.* at 324 n.16.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held, in relevant part:

> Defendant next argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that defendant committed three counts of assault with intent to rob while armed. In a criminal case, due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. *People v. Johnson*, 460 Mich. 720, 723; 597 N.W.2d 73 (1999). In reviewing the sufficiency of the evidence, this Court must view the evidence de novo in the light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* at 723. Circumstantial evidence and the reasonable inferences which arise from the evidence can constitute satisfactory proof of the elements of the crime. *Carines, supra* at 757.
>
>                * * *
>
> To obtain a conviction on a charge of assault with intent to rob while armed, the prosecution must prove beyond a reasonable doubt: (1) an assault with force and violence, (2) an intent to rob and steal, and (3) defendant's being armed. . . . Defendant here does not challenge his being armed. Moreover, in regard to defendant's assertion that the prosecution presented insufficient evidence that defendant assaulted each victim, the contention is without a factual basis. Each count was supported by testimony from which a rational jury could infer that all five employees were frightened when defendant forced them into the restaurant at gun point and held them in the back room. Accordingly, only the second element will be further addressed.
>
> Defendant argues that insufficient evidence was presented to sustain his three convictions for assault with intent to rob while armed because he only intended to

11

rob the restaurant.  We disagree. . . .

[D]efendant maintains that he did not intend to rob all the employees, but only
intended to rob Leonard.  However, the prosecutor need not show that the victim
actually owned the property taken.  Rather, "the prosecutor need only show that
the property was taken in the victim's 'presence' and that the victims' right to
possess the property was superior to the defendant's right to possess it."  *People
v. Rogers*, 248 Mich. App. 702, 707; 645 N.W.2d 294 (2002) *citing People v.
Jones*, 71 Mich. App. 270, 272, 246 N.W.2d 381 (1976).  "[I]t is enough that the
cash or personalty belongs to someone other than the thief."  *Id.,* at 712, citing
*People v. Needham*, 8 Mich. App. 679; 155 N.W.2d 267 (1967).

This instant case is analogous to *Rogers*.  In *Rogers*, the defendant, after robbing
a store, assaulted and attempted to rob three store employees while armed.  Two
of the employees, however, did not have money to give defendant.  *Rogers,
supra,* at 705-06.  On appeal from three armed robbery convictions, the defendant
argued that he did not take the two employees' personal property.  *Id.* at 706.
This Court nonetheless concluded that "all three employees had a right to possess
the company's cash superior to that of defendant."  *Id.* at 713.

Here, the prosecution presented evidence that Leonard was the restaurant's
manager and Brown and Jones were both shift managers.  It is reasonable to
assume that Leonard, Brown and Jones, as managers, had a right to possess the
restaurant's cash superior to that of defendant.  Moreover, the remaining
employees, Wilkerson and Reeves, though not managers of the restaurant, had a
greater right to the subject property than defendant under *Rogers*.  *Id.*
Accordingly, because there was sufficient evidence presented that defendant
attempted to take the restaurant's property, a rational jury may have concluded
beyond a reasonable doubt that defendant intended to rob the employees.
Therefore, the prosecutor presented sufficient evidence to support defendant's
three convictions for assault with intent to rob while armed.

*Rogers*, slip op. at 4.

The Michigan Court of Appeals, although not citing *Jackson*, cited case law which

clearly incorporated the *Jackson* standard.  Petitioner has not presented any evidence to show

that the state court's findings of fact were erroneous.  When assessing a sufficiency of the

evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness

credibility. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  A reviewing court "faced with a

record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992). According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### C. Alleged Prosecutorial Misconduct

In his fourth habeas claim, Petitioner argues that the prosecutor committed misconduct when he misrepresented key evidence during trial and closing argument. Specifically, Petitioner argues that the prosecutor improperly moved to admit into evidence a jacket and hat that Petitioner was wearing when arrested because these clothing items were not those described by two witnesses as being worn by the perpetrator.[2]

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of

---

[2] Respondent argues that this claim is procedurally defaulted. As noted above, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson*, 351 F.3d at 215. The Court determines that, in this instance, the interests of justice are best served by addressing the merits of this claim.

the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  The

aim of due process "is not punishment of society for the misdeeds of the prosecutor but

avoidance of an unfair trial to the accused." *Id.* (citations omitted).  On habeas review, a federal

court considers the following factors when weighing the extent of prosecutorial misconduct:

> (i) the degree to which the misconduct tended to mislead the jury and prejudice
> the accused; (ii) whether the misconduct was isolated or extensive; (iii) whether
> the misconduct was deliberate; and (iv) the strength of the evidence establishing
> the guilt of the accused.

*Givens v. Yukins*, 238 F.3d 420 (Table), 2000 WL 1828484, *6 (6th Cir. 2000), *citing  Angel v.

Overberg*, 682 F.2d 605, 608 (6th 1982).

The Michigan Court of Appeals held that the prosecutor did not engage in misconduct.

The state court reasoned that the admission of the clothing items was proper because they were

relevant to Petitioner's identity as the perpetrator, and, to the extent that the clothing items were

inconsistent with witnesses' descriptions of the perpetrator, that bore upon the strength of the

prosecutor's case rather than the admissibility of the items.

The Court finds that the state court's reasoning is not contrary to or an unreasonable

application of Supreme Court precedent.  As observed by the Michigan Court of Appeals, any

inconsistencies between the descriptions of the clothing items provided by witnesses and

Petitioner's actual clothing did not render the clothing inadmissible.  Rather, the inconsistencies

were relevant to the weight of the evidence and used by Petitioner to support his defense.  The

prosecutor's actions did not deny Petitioner a fair trial.

### D.  Ineffective Assistance of Trial Counsel

In his fifth and sixth habeas claims, Petitioner argues that his trial attorney was

ineffective in failing to object to the prosecutor's admission of the jacket and hat he was wearing

14

when arrested and in failing to obtain the police radio run tape from the prosecutor.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689.

As discussed above, Petitioner has not shown that the admission of the jacket and hat were improper. Therefore, he cannot show that his attorney was ineffective in objecting to its admission. Moreover, the fact that the clothing worn by Petitioner did not exactly match the witnesses' descriptions of the perpetrator's clothing was used by the defense to attack the prosecution's case.

Petitioner also claims that his attorney was ineffective in failing to obtain a copy of the police radio tape. The Michigan Court of Appeals held that Petitioner failed to establish prejudice because other than a conclusory statement that it would have helped his case, Petitioner fails to identify anything specific that would have been gained by production of the tape. Similarly, in his habeas corpus petition, Petitioner fails to allege with any specificity what may have been gained by admitting the tape. The Court finds that Petitioner's conclusory

15

allegations are insufficient to show that the state court's decision was contrary to or an unreasonable application of *Strickland*.

### E.  Sentencing-Related Claims

Petitioner presents eleven claims (7 through 17) related to alleged errors in sentencing. The majority of these claims allege violations of *Blakely  v. Washington*, 542 U.S. 296 (2004). The balance of these claims allege that the state court improperly calculated offense variables and improperly applied Michigan law.

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  "[S]tate courts are the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review."  *See Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).   Therefore, Petitioner's claims that certain offense variables were incorrectly scored or that the trial court incorrectly applied Michigan law are not cognizable on habeas corpus review.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that any fact, other than a prior conviction, "that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 476. However, Michigan has an indeterminate sentencing system for most crimes.  The maximum sentence for Petitioner's crimes is set by state law.

In *Blakely*, the Supreme Court addressed indeterminate sentencing systems and held that

16

an indeterminate sentencing system does not violate the Sixth Amendment.  *Blakely*, 542 U.S. at

309.  The Court explained that while indeterminate sentencing systems may involve judicial fact-

finding, of those facts a judge may find important to the exercise of the judge's sentencing

discretion, those facts "do not pertain to whether the defendant has a legal *right* to a lesser

sentence. . . ."  *Id.* (emphasis in original).  Judicial factfinding may not be used to impose a

sentence "beyond the prescribed statutory maximum."  *Apprendi*, 530 U.S. at 490.  In this case,

the sentencing court did not exceed the statutory maximum for Petitioner's crimes.  Therefore,

the sentencing scheme did not run afoul of the Sixth Amendment.  Because *Blakely* does not

apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's

sentence did not violate Petitioner's constitutional rights. *See Tironi v. Birkett*, No. 06-1557,

2007 WL 3226198, * 1 (6th Cir. Oct. 26, 2007) ("*Blakely* does not apply to Michigan's

indeterminate sentencing scheme.").

### F.  Procedural Default

Respondent argues that Petitioner's remaining claims (18 through 24) are procedurally

defaulted.  The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner

files an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state

appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or

if he fails to comply with a state procedural rule that required him to have done something at trial

17

to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or

file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice

test may be excused if a petitioner "presents an extraordinary case whereby a constitutional

violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *see*

*Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule

applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with

that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*,

536 U.S. 947 (2002); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992).

Additionally, the last state court from which the petitioner sought review must have invoked the

state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.

*Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on

federal law or was interwoven with federal law, a state procedural rule is an independent and

adequate state ground[] only if the state court rendering judgment in the case clearly and

expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202.

Whether the independent state ground is adequate to support the judgment is itself a federal

question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction

both on the merits and, alternatively, on a procedural ground, the procedural default bar is

invoked and the petitioner must establish cause and prejudice in order for the federal court to

review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning,

but simply affirms the conviction in a standard order, the federal habeas court must look to the

18

last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

"Whether a state court has actually enforced a procedural sanction depends on whether 'the last state court from which the petitioner sought review . . . invoked the stated procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims.'" *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007), *quoting Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004). Petitioner first properly raised his remaining claims during state collateral proceedings. The Michigan Supreme Court denied leave to appeal on the ground that Petitioner failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *Rogers*, 477 Mich. 1031 (2007). In *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and in *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit held that this language invokes a state procedural rule, which is sufficient to preclude federal habeas review. The Michigan Court of Appeals, denied leave to appeal based upon a procedural bar as well. Accordingly, these claims are barred from habeas review unless Petitioner can show cause and prejudice to excuse the default or that failure to consider the claims will result in a fundamental miscarriage of justice.

Petitioner alleges that his appellate attorney's ineffectiveness is cause sufficient to excuse his procedural default. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' . . .

19

. Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations omitted).

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). The prejudice standard in the context of an alleged failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285. "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)).

The trial court, in denying Petitioner's motion for relief from judgment, held that Petitioner's appellate attorney was not ineffective in failing to raise additional claims on Petitioner's direct appeal.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). None of the claims Petitioner argues his appellate attorney should have raised on appeal have been shown to have any merit. Therefore, Petitioner cannot show that counsel was ineffective in failing to raise these issues on appeal.

20

Thus, Petitioner has failed to establish cause to excuse his procedural default, and his claims are barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id.*. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence. In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal to consider the probative force of relevant evidence that was either excluded or unavailable at trial. . . . The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including . . . evidence tenably claimed to have been wrongly excluded or to have become available only after trial.
>
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* (internal quotation omitted).

Petitioner fails to present new, reliable evidence in light of which no reasonable juror

21

would have found him guilty.  Therefore, these claims are barred from consideration by procedural default.

### V.  Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination.  *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002).  The Court concludes that it is presently in the best position to decide whether to issue a COA.  *See id.* at 901 (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997)), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . .  will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not state a claim upon which habeas relief may be warranted.  Therefore, the Court denies a certificate of appealability.

### VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

22

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 9, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record and Randy Rogers by electronic means or U.S. Mail on December 9, 2009.

s/Linda Vertriest
Deputy Clerk

23